IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO.: 1:07-CV-1516 |
| v. | ) ) | |
| APAC-SOUTHEAST, INC., f/k/a APAC-GEORGIA, INC., | ) ) ) | |
| Defendant. | ) ) ) | JURY TRIAL DEMANDED |

## DEFENDANT'S INITIAL DISCLOSURES

(1)   If the defendant is improperly identified, state defendant's correct identification and state whether defendant will accept service of an amended summons and complaint reflecting the information furnished in this disclosure response. The defendant is properly identified.

(2)   Provide the names of any parties whom defendant contends are necessary parties this action, but who have not been named by plaintiff.  If defendant contends that there is a question of misjoinder of parties, provide the reasons for defendant's contention. Defendant does not so contend.

(3)   Provide a detailed factual basis for the defense or defenses and any counterclaims or crossclaims asserted by defendant in the responsive pleading. On May 28, 2002, APAC-Southeast, Inc. ("APAC") entered into a contract to serve as prime contractor on a construction project that was owned by the Georgia Department of Transportation ("GDOT"), Project ID No. B10957-02-000-0, located in Monroe County, Georgia (hereinafter the "Project").  APAC's work on

the Project consisted of, *inter alia*, concrete paving and rehabilitation work on the southbound lanes of Interstate 75 in Monroe County, Georgia. APAC entered into a subcontract dated July 30, 2002 ("Subcontract") with Costello Industries, Inc. ("Costello"), whereby Costello agreed to perform certain services on behalf of APAC in accordance with the terms and conditions of the Subcontract. Costello's Subcontract work consisted primarily of concrete rehabilitation work.

The Subcontract provided that Costello was to "provide and maintain the necessary and acceptable traffic control devices for [Costello] to set closures in accordance with the [prime contract] specification for closures." The Subcontract obligated Costello to procure, *inter alia*, comprehensive general liability insurance which named APAC as an additional insured with primary coverage and which shall "indemnify, defend and protect [APAC] from all claims, expenses and liabilities in any way connected with any act or omission of [Costello] ... regardless of whether [APAC] is partially at fault."

Pursuant to the terms and conditions of the Subcontract, Costello, by and through its insurance agent, named APAC as an additional insured on Costello's commercial general liability, which was issued by Liberty Mutual Insurance Company ("Liberty Mutual") and an excess liability insurance policy, issued by The Insurance Company of the State of Pennsylvania ("ISCP"). APAC is an

2

additional insured on Liberty Mutual Policy No. YY2-111-255229-022/9 ("Liberty Mutual Policy") and, according to its terms and conditions, is afforded $1,000,000 in coverage for liabilities and losses arising out of Costello's performance of the Subcontract work.

On or about September 15, 2003, Messrs. James Graves, Matthew Graves and Stephen Dawson were seriously injured when a vehicle that they were riding in, and which was being operated by Mr. James Graves, collided with a tractor trailer that was owned and operated by Lorraine Horse Transport. (the "Graves Accident"). The Graves Accident occurred within the confines of a temporary lane closure that Costello had placed during its performance of the Subcontract work.

As a direct and proximate result of the injuries Messrs. James Graves, Matthew Graves and Stephen Dawson suffered in the Graves Accident, a lawsuit was filed against numerous defendants, including APAC and Costello, on behalf of Messrs. James Graves, Matthew Graves and Stephen Dawson. (the "Graves Lawsuit"). The Complaint in the Graves Lawsuit alleges, *inter alia*, that Messrs. James Graves, Matthew Graves and Stephen Dawson sustained serious injuries, including two incidents of paraplegia, in the Graves Accident because the temporary traffic control measures that had been placed by Costello created a hazardous and confusing condition for motorists.

At the time of the Graves Accident, Costello was performing work pursuant to the Subcontract.  Costello was solely responsible for placing the temporary lane closure that was at issue in the Graves Lawsuit.  The temporary lane closure complained of in the Graves Lawsuit was set up and placed exclusively by Costello personnel.  Discovery in the Graves Lawsuit suggested that Costello unilaterally made changes to various aspects of the traffic control plan to be implemented on the Project.  The plaintiffs in the Graves Lawsuit alleged that such conduct on the part of Costello was negligent and proximately caused and/or contributed to the Graves Accident.

Following service of the Graves Lawsuit upon APAC, APAC demanded that Costello and its insurers indemnify and defend APAC from any and all costs arising out of the Graves Lawsuit.  On or about February 9, 2006, Liberty Mutual acknowledged that APAC was entitled to indemnity and defense under the Liberty Mutual Policy and accepted APAC's tender of indemnity and defense of the Graves Lawsuit.  Liberty Mutual accepted APAC's tender of defense of the Graves Lawsuit without issuing a reservation of rights and, by and through such action and subsequent conduct, waived the opportunity to disclaim coverage or other policy or coverage defenses with respect to the Graves Lawsuit. Alternatively, Liberty Mutual is estopped from invoking any coverage defenses or

limitations.

Thereafter, Liberty Mutual substituted its preferred counsel to represent APAC in the Graves Lawsuit. At that time, Liberty Mutual assigned a "conflict claims adjuster" to coordinate with Liberty Mutual's designated counsel on behalf of Liberty Mutual. Significantly, Liberty Mutual's "conflict claims adjuster" disclosed to APAC that he had no settlement authority, and that Costello's Liberty Mutual claims adjuster had sole authority to make settlement offers in the Graves Lawsuit.

On or about July 25, 2006, the plaintiffs in the Graves Lawsuit submitted a written offer of compromise to fully and finally settle and resolve all claims against APAC, Costello and GDOT arising out of the Graves Accident. The offer of compromise outlined alleged contractual breaches on the part of Costello that allegedly created liability on the part of Costello, APAC and GDOT. The offer of compromise also outlined the prospects for a judgment against said defendants that could substantially exceed Costello's available insurance policy limits. The offer of compromise offered to settle the claims at issue within Costello's available primary and excess insurance policy limits.

Following receipt of the Graves Lawsuit plaintiffs' July 25, 2006 offer of

compromise, and based upon the legitimate, reasonable risk that an adverse judgment in the Graves Lawsuit could exceed the available insurance policy limits, APAC made a formal demand upon Costello, Liberty Mutual, and Costello's excess insurance carrier, ICSP, to settle the Graves Lawsuit within the available insurance policy limits.   APAC made several additional demands to Liberty Mutual to settle the Graves Lawsuit.   Significantly, however, Liberty Mutual simply failed to respond to both (a) the Graves Lawsuit plaintiffs' settlement demands and to (b) APAC's demands that it settle the Graves Lawsuit on behalf of APAC.   Liberty Mutual never tendered its policy limits or inquired to see if it could resolve the Graves Lawsuit on behalf of APAC within its policy limits.

After the expiration of the Graves Lawsuit plaintiffs' July 25, 2006 offer to settle their claim against APAC, the Graves Lawsuit plaintiffs' submitted a demand, via a letter dated December 15, 2006, to APAC to settle their claims solely against APAC.  The demand comprised a demand for APAC's first layer of "named insured" insurance policy limits and was set to expire on January 14, 2007 – less than one month prior to the February 12, 2007 specially set trial date for the Graves Lawsuit in Monroe County, Georgia Superior Court.

Following receipt of the December 15, 2006 demand for APAC's first layer of "named insured" insurance coverage, APAC, by and through email between

counsel for all parties to the Graves Lawsuit, agreed to mediate the case with the Graves Lawsuit plaintiffs. Liberty Mutual was simultaneously notified of APAC's willingness to mediate the Graves Lawsuit. The Graves Lawsuit plaintiffs agreed to mediate the case only if the mediation could be conducted on January 9, 2007 – approximately 1 month before the trial was to begin in the Graves Lawsuit.

Given the looming expiration of the Graves Lawsuit plaintiffs' December 15th demand for APAC's first layer of "named insured" insurance coverage, APAC agreed to mediate the Graves Lawsuit on January 9, 2007. Liberty Mutual was copied on all relevant correspondence and was fully aware of the intent of APAC to mediate the Graves Lawsuit. Liberty Mutual consented to the scheduling of the January 9, 2007 mediation of the Graves Lawsuit.

Prior to the Graves Lawsuit mediation, Liberty Mutual's designated counsel for APAC in the Graves Lawsuit prepared a case evaluation, which was addressed to Liberty Mutual, which evaluated the settlement value of the Graves Lawsuit at an amount exceeding the Liberty Mutual Policy limits, with a likely adverse verdict range substantially in excess of the Liberty Mutual Policy limits. The case evaluation was supplied to Liberty Mutual prior to the January 9th Graves Lawsuit mediation.

The Graves Lawsuit mediation took place as scheduled on January 9, 2007, and APAC settled the claims against it for an amount in excess of the Liberty Mutual Policy limits. At Liberty Mutual's directive, Liberty Mutual's appointed counsel for APAC attended and participated in the scheduled mediation. Moreover, Liberty Mutual's appointed counsel for Costello also attended and participated in the scheduled mediation. Indeed, even the excess carrier's counsel for Costello attended the scheduled mediation on behalf of Costello. All parties to the Graves Lawsuit were represented at the mediation. Liberty Mutual consented to APAC's settlement of the Graves Lawsuit for a figure exceeding the Liberty Mutual Policy limits. Liberty Mutual waived any rights it may have had to object to APAC's settlement of the Graves Lawsuit. Alternatively, Liberty Mutual is estopped from objecting to APAC's settlement of the Graves Lawsuit.

Costello's counsel had authority from Liberty Mutual to offer its full policy limits to settle the Graves Lawsuit at the January 9, 2007 mediation – and Liberty Mutual in fact offered its full policy limits to settle the Graves Lawsuit during the January 9th mediation. The Graves Lawsuit plaintiffs' rejected Costello's offers of compromise at the January 9th mediation. APAC settled the Graves Lawsuit plaintiffs' claims against it for an amount in excess of the Liberty Mutual Policy limits at the January 9th mediation.

Following settlement of the Graves Lawsuit claims against APAC, all conditions precedent to recovery of the full Liberty Mutual Policy limits had been satisfied by APAC, and APAC demanded that Liberty Mutual tender its full policy limits to the Graves Lawsuit plaintiffs' on behalf of APAC in the manner required by the Liberty Mutual Policy.  APAC's "conflict claims adjuster," which had been appointed by Liberty Mutual to coordinate with APAC's Liberty Mutual designated counsel on behalf of Liberty Mutual, then advised APAC that he would consult with Costello's Liberty Mutual claims adjuster for further direction.

Thereafter, Liberty Mutual, for the first time, advised APAC that it would not tender the Liberty Mutual Policy limits to the Graves Lawsuit plaintiffs on behalf of APAC, instead claiming that APAC "voluntarily" issued payment to the Graves Lawsuit plaintiffs in contravention of the Liberty Mutual Policy obligations.  Liberty Mutual simultaneously advised APAC that it was purportedly withdrawing its agreement to provide APAC with a defense in the Graves Lawsuit.  APAC was forced to fund the entire settlement of the Graves Lawsuit out of its own monies, and APAC has done so.

The Liberty Mutual Policy provides valid and collectible insurance coverage on behalf of APAC for the Graves Lawsuit.  All conditions precedent to APAC's recovery of the Liberty Mutual Policy limits have been satisfied or waived, and

APAC is presently entitled to recover the full Liberty Mutual Policy limits. APAC is an additional insured on the Liberty Mutual Policy. As an additional insured, Liberty Mutual owed APAC a fiduciary and contractual duty to act in APAC's best interests. Liberty Mutual has intentionally, and in bad faith, breached its fiduciary and contractual obligations to APAC.

In addition, upon information and belief, Liberty Mutual deliberately concealed the fact that Costello's excess insurer was denying, or intended to deny, that APAC was an additional insured on Costello's excess insurance policy. Liberty Mutual, by and through its contractual and fiduciary relationship with APAC, was obligated to work in good faith to protect APAC's interests. In contravention of these obligations, Liberty Mutual, in bad faith, worked directly against the interests of APAC.

Liberty Mutual, by its words and conduct, caused APAC to believe that APAC was afforded coverage for the Graves Lawsuit by both Liberty Mutual and ICSP. Liberty Mutual was aware that APAC believed itself to be insured by ICSP, and Liberty Mutual fraudulently concealed ICSP's intentions to deny coverage to APAC on the excess insurance policy. APAC detrimentally relied upon Liberty Mutual's actions and misrepresentations concerning APAC's status as an additional insured on the ICSP excess insurance policy in the conduct of its

defense of the Graves Lawsuit. Liberty Mutual is equitably estopped from denying the full policy limits of the Liberty Mutual Policy to APAC for the damages APAC has incurred as a result of the Graves Lawsuit.

Liberty Mutual's failure to disclose ICSP's intended denial of coverage, as well as its failure to tender the Liberty Mutual Policy limits on behalf of APAC to resolve the Graves Lawsuit, was undertaken in bad faith and entitles APAC to damages afforded by O.C.G.A. § 33-4-6. In addition, Liberty Mutual is liable to APAC for the attorneys' fees and costs incurred by APAC to prosecute this action and for the attorney's fees and costs which remain unpaid from the Graves Lawsuit. Liberty Mutual is further liable to APAC for the full amount of the Liberty Mutual Policy limits as payment toward satisfaction of the settlement payment that APAC was forced to pay to the plaintiffs in the Graves Lawsuit. Alternatively, Liberty Mutual is liable to APAC for the full amount of the settlement payment it was forced to make to the Graves Lawsuit plaintiffs to settle the Graves Lawsuit.

Liberty Mutual's collusion and cooperation with ICSP, at APAC's expense, as well as Liberty Mutual's bad faith conduct toward APAC shows willful misconduct, malice, wantonness or that entire want of care which raises the presumption of conscious indifference to consequences and entitles APAC to an

award of punitive damages against Liberty Mutual pursuant to O.C.G.A. §51-12-5.1.   Alternatively, Liberty Mutual acted negligently when it misrepresented ICSP's intentions during the course of the Graves Lawsuit and when it refused to tender its policy limits to settle the Plaintiffs' claims in the Graves Lawsuit. Liberty Mutual has breached the covenant of good faith and fair dealing it owed to APAC and is liable for all damages arising therefrom.

APAC is equitably subrogated to the full policy limits of the Liberty Mutual Policy.  Liberty Mutual offered its full policy limits to settle the Graves Lawsuit at the January 19, 2007 mediation of the Graves Lawsuit.  APAC relied upon use of the Liberty Mutual Policy limits when settling the Graves Lawsuit, and Liberty Mutual would be unjustly enriched if it were not required to remit the full limits of the Liberty Mutual Policy to APAC.  Liberty Mutual is therefore estopped from denying coverage to APAC for the full amount of its policy limits, or alternatively the full amount of APAC's settlement of the Graves Lawsuit.

Liberty Mutual breached its duties to indemnify APAC for the policy limits of the Liberty Mutual Policy for damages arising out of the Graves Lawsuit, and Liberty Mutual is liable to APAC for the full limits of the Liberty Mutual Policy, or alternatively for the full amount of APAC's settlement of the Graves Lawsuit, based upon contractual and common law indemnity, as well as common law

contribution.  Liberty Mutual has been stubbornly litigious and has caused APAC

unnecessary trouble and expense in its actions toward APAC, entitling APAC to

litigation expenses and attorneys' fees under O.C.G.A.  § 13-6-11.

(4)    Describe in detail all statutes, codes, regulations, legal principles, standards
and customs or usages, and illustrative case law which plaintiff contends are
applicable to this action.

Defendant's  non-exclusive list is as follows:  28 U.S.C. §2201; O.C.G.A. §13-1-1,

*et. seq.*; O.C.G.A. §13-2-1, *et. seq.*;   O.C.G.A. §13-4-1, *et. seq.*; O.C.G.A. §13-6-

1, *et. seq.*;  O.C.G.A. §51-12-5;  O.C.G.A. §51-12-5.1; O.C.G.A. §51-6-1, *et. seq.*;

O.C.G.A. §33-4-6; O.C.G.A. §13-6-11; O.C.G.A. §51-12-32; O.C.G.A. §51-12-33;

*Sylar v. Hodges*, 250 Ga. App. 42, 550 S.E.2d  438 (2001). *Yon v. City of Atlanta*,

201 Ga. 800, 41 S.E.2d 516 (1947);     *Commercial Mortg. & Finance Corp. v.*

*Greenwich Sav. Bank*, 112 Ga. App. 388, 145 S.E.2d 249 (1965);  *Collier v. State*

*Farm Inc. So., 249* Ga. App. 865, 549 S.E.2d 810 (2001);  *Ameron Int'l Corp. v.*

*Insurance Co. of State of PA*, 150 Cal.App.4[th] 1050 (2007); *Boardman Petroleum*

*v. Federated Mut. Ins. Co.*, 269 Ga. 326, 498 S.E.2d 492 (1988); *Potomac Ins. Co.*

*v. Wilkins Co., Inc.*, 376 F.2d 425 (10th Cir. 1967); *BBL-McCarth, LLC v. Baldwin*

*Paving Co.*, -- S.E.2d --, 2007 WL 1053372 (Ga. App. 2007); *Donegal Mutual Ins.*

*Co. v. Grossman*, 195 F.Supp.2d 657 (U.S.M.D. PA. 2001); *Gulf Ins. Co. v.*

*Mathis*, 183 Ga. App. 323, 358 S.E.2d 850 (1987); *Peris v. Safeco Ins. Co.*, 276

Mont. 486, 916 P.2d 780 (1996); *Sumitomo Marine & Fire Ins. Co. of America v. Southern Guar. Ins. Co. of Georgia*, 337 F.Supp.2d 1339 (2004); *Peach Consolidated Properties, LLC v. Carter*, 278 Ga. App. 273, 828 S.E.2d 680; *Connell v. Guarantee Trust Life Ins. Co.*, 246 Ga.App. 467, 470(1), 541 S.E.2d 403 (2000); *Tudor v. Am. Emp. Ins. Co.*, 121 Ga.App. 240, 242, 173 SE2d 403, 405 (1970); *Village Auto Ins. Co. v. Rush*, -- S.E.2d --, 2007 WL 2051631 (Ga. App. 2007); *Federal Ins. Co. v. Traveler's Cas. And Sur. Co.*, 310 F.3d 707 (11th Cir. 2002); *Rental Equip. Group, LLC v. MACI, LLC*, 263 Ga.App., 587 S.E.2d 364 (2003); *United States Fire Ins. Co. v. Hilde*, 172 Ga.App. 161, 322 SE2d 285, 288 (1984) .   Defendant reserves the right to amend this response as the case progresses, pursuant to NDLR 26.1.

(5)    Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses, unless solely for impeachment, identifying the subjects of the information. (Attach witness list to Initial Disclosures as Attachment A).

See Attachment A.

(6)    Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.  For all experts described in F.R. Civ.P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule. (Attach expert witness list and written reports to Responses to Mandatory Disclosures as Attachment B).

Defendant has not identified any expert witnesses at this time, but reserves the right to supplement its response if and when an expert witness has been identified.

(7)    Provide a copy or description by category and location of all documents, data compilations, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information. (Attach document list and descriptions to Responses to Initial Disclosures as Attachment C).

See attachment C.

(8)    In the space provided below, provide a computation of any category of damages claimed by you.  In addition, include a copy or description by category and location of the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, making such documents or evidentiary material available for inspection and copying under F.R.Civ.P. 34 (Attach any copies and descriptions to Responses to Mandatory Disclosures as Attachment D).

Defendant is seeking all damages allowed by law and all equitable remedies

available to it for Plaintiff's breach of contract and wrongful refusal to honor its

contractual obligations, including without limitation bad faith damages authorized

by O.C.G.A. §33-4-6.  Defendant is also seeking all damages that may be awarded

it as determined by the enlightened conscious of the jury based upon Plaintiff's

willful misconduct, malice or entire want of care.   Defendant's damages are

incapable of precise calculation at this time, as the damages sought include an

award of punitive damages to be determined by the enlightened conscious of the

jury.  Plaintiff is liable to Defendant for all such damages incurred by Defendant as

a result of its actions, including without limitation interest accruing on the damages

incurred by Defendant.  Defendant's damages are, at a minimum the policy limits

of the Liberty Mutual Policy, or $1,000,000, or alternatively the full amount of the

settlement of the Graves Lawsuit, plus interest, bad faith penalties and attorneys

fees.

(9)    If defendant contends that some other person or legal entity is, in whole or in part, liable to the plaintiff or defendant in this matter, state the full name, address, and telephone number of such person or entity and describe in detail the basis of such liability.

Defendant does not so contend.

(10)   Attach for inspection and copying as under F.R.Civ.P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments to satisfy the judgment.  (Attach copy of insurance agreement to Initial Disclosures as Attachment E).

See Exhibit A to Complaint.

Respectfully submitted this 16th day of August, 2007.

> Law Offices of M. Craig Hall, LLC
>
> /s/ M. Craig Hall
> M. Craig Hall
> Georgia Bar No. 319220
> 1535 Mt. Vernon Road, Suite 200
> Dunwoody, GA 30338
> Telephone (770) 698-0555
> Facsimile (770)573-3601
> CraigHall@DunwoodyLawyers.com
>
> ATTORNEY FOR DEFENDANT
> APAC-SOUTHEAST, INC. f/k/a
> APAC-GEORGIA, INC.

**ATTACHMENT A**

William Harvey Whichard, Sr. Technical Claims Specialist; Milton J. Harrelson, AIC, Senior Technical Claims Specialist II; Liberty Mutual Claims, PO Box 3500, Matthews, NC 28106-3500. Mr. Harrelson served as APAC's "conflict adjuster", on behalf of Liberty Mutual, for the Graves Lawsuit. Mr. Whichard served as Costello's adjuster, on behalf of Liberty Mutual, for the Graves Lawsuit.

Allen R. McKay, ARM, Complex Claims Director, AIG Domestic Claims, Inc., Excess Complex Claims, 175 Water Street, 20th Floor, New York, NY 10038. Mr. McKay represented AIG with regard to APAC's first layer of excess insurance coverage (National Union; $25MM). He informed APAC that it had a duty to settle the Graves Lawsuit within its primary insurance limits.

George Wood, AIG Excess Claims Department, 100 Summer Street, Boston MA 02110. Mr. Wood represented AIG with regard to APAC's second layer of excess insurance coverage (Lexington Insurance; $19MM). He informed APAC that it had a duty to settle the Graves Lawsuit within its primary insurance limits.

Jacklin Kurta, AIG Domestic Claims, Inc., Excess Complex Claims, 175 Water Street, 20th Floor, New York, NY 10038. Ms. Kurta contacted APAC after APAC notified AIG of the policy limit demand in the Graves case and stated that the claim would be assigned to an adjuster.

Brian Dolan, AIG Domestic Claims, Inc., Excess Complex Claims, 175 Water Street, 20th Floor, New York, NY 10038. Mr. Dolan contacted APAC after APAC notified AIG of the policy limit demand in the Graves case and stated that the claim would be assigned to an adjuster.

Michael Skura, Complex Claims Director, AIG Technical Services, Inc., Excess Complex Claims, 175 Water Street, 20th Floor, New York, NY 10038. Mr. Skura is APAC's account manager at AIG with regard to its $44MM of first and second layer excess insurance coverage. APAC contacted Mr. Skura after receiving a policy limit demand in the Graves case since he is APAC's account manager APAC claims for AIG.

Holly Weatherby, AIG Domestic Claims, Inc., Excess Specialty Claims, 175 Water Street, 20th Floor, New York, NY 10038. APAC contacted Ms. Weatherby after receiving a policy limit demand in the Graves case since she had managed other APAC claims for AIG.

Mark Chaplin, AIG Domestic Claims, 70 Pine Street, 7th Floor, New York, NY 10270. Mr. Chaplin Represented AIG, in the capacity of an adjuster on behalf of the Insurance Company of the State of Pennsylvania, with respect to the Graves Lawsuit.

Ronald C. Ashmore, Division President, Kevin R. Crusa, Project Manager, Jerry Lay, Project Superintendent, Lee A. Cuneo, Contracts Administrator, Milton E. Lane, Environmental, Health and Safety Director, APAC-Southeast, Inc., Ballenger Paving Division, P.O. Box 127, Greenville, SC 29602. Mr. Ashmore negotiated the subcontract at issue with Costello and communicated with Costello regarding requirements of the subcontract. Mr. Cuneo coordinated with Costello and Lockton concerning the insurance requirements at issue. Mr. Crusa served as the Project Manager wherein the Graves Accident occurred. Mr. Lay was present at the Project on the night of the Graves Accident.

Rick Brockman, Division President Costello Southeast, Inc., Patrick Lynch, Supervisor; Geraldo Alcantar, Worksite Traffic Control Supervisor; Costello Industries, Inc.    Messrs. Brockman, Lynch and Alcantar have knowledge concerning Costello's work on the Project.

William Beasley, former Worksite Traffic Control Supervisor for Costello Industries, Inc.; David Boyer, 12405 SW 5th Street, Davie, FL 33325, former superintendent for Costello Industries, Inc.. Mr. Beasley set up the temporary lane closure at issue in the Graves Lawsuit. Mr. Boyer has knowledge concerning Costello's work on the Project.

Deputy Michael Hull, Sergeant Brad Freeman, Deputy Richard Coughenour, Monroe County Sheriff's Office, 145 L. Cary Bittick Dr., Forsyth, GA 31029. Messrs Hull and Freeman responded to the Graves Accident. Mr. Coughenour has knowledge concerning the absence of a Deputy from Costello's lane closure on the night of the Graves Accident.

Representatives of Florida Farm Bureau Casualty Insurance Company, 5700 SW

34th Street, Gainesville, FL  32608 have knowledge of the injuries suffered by the Plaintiffs' in the Graves Accident.

Representatives of Benedict Engineering Company, LLC, 3660 Hartsfield Road, Tallahassee, FL  32303 have knowledge of the Graves Accident.

Daniel Behan, saw cutter on night of Graves Accident; Jerry Behan, Supervisor of saw cutting crew on night of Graves Accident; Charlie Harris, saw cutter on night of Graves Accident
ABC Cutting Contractors of Atlanta, Inc.

Clayton L. Moore, Area Engineer; Glenn Starks, Construction Inspector; Kevin VanHouten, Assistant Area Engineer, Michael Ryan Kellett, Construction Inspector, Georgia Department of Transportation.   Messrs. Moore, Starks, VanHouten and Kellet have knowledge of the Project and contract work related thereto.

James Graves, Mathew Graves, Stephen Dawson are the plaintiffs in the Graves Lawsuit and have knowledge related thereto.  Linda Graves is the wife of James Graves and mother of Mathew Graves and has knowledge relating to the Graves Lawsuit.  Stephen Freitag and Janice Freitag are the parents of Stephen Dawson and have knowledge relating to the Graves Lawsuit.

Bill John O'Grady, 19850 NE 30 St., Williston, FL  32696, driver of Lorraine Horse Transport tractor;  Thomas Sutcliffe, 3022 NE 14, Silver, FL  34488, co-driver of Lorraine Horse Transport tractor.  Messrs. O'Grady and Sutcliffe were involved in the Graves Accident and have knowledge relevant thereto.

Phil Henry, Esquire;  Clay Milling, Esquire; Marla Eastwood, Esquire, Henry Spiegel, Fried & Milling, LLP, 950 East Paces Ferry Road, Suite 2450, Atlanta, GA  30326-1386; Kirk J. Post, Esquire, Two Ravina Drive, Suite 1570, Atlanta, GA  30346; Donald M. Hinkle, Esquire, Hinkle & Foran, 1545 Raymond Diehl Road, Suite 150, Tallahassee, FL  323208;  Attorneys for Plaintiffs in the Graves Lawsuit.  Plaintiffs' counsel have knowledge of the conduct of the litigation of the Graves Lawsuit.

Robert C. Edwards, Esquire, Assistant Attorney General, 40 Capitol Square, SW, Atlanta, GA  30334, Attorney for Georgia Department of Transportation in the

Graves Lawsuit; Michael J. Rust, Esquire, Gray, Rust, St. Amand, Moffett & Brieske, 950 East Paces Ferry Road, Suite 1700, Atlanta, GA 30326, attorney for Douglas Asphalt Company in the Graves Lawsuit; R. Shane Lazenby, Esquire, Forrester & Brim, P.O. Box 1688, Gainesville, GA 30503, Attorney for ABC Cutting Contractors of Atlanta, Inc. in the Graves Lawsuit; J. Robb Cruser, Esquire, Monica L. Wingler, Esquire, Cruser & Mitchell, LLP, Peachtree Ridge, Suite 750, 3500 Parkway Lane, Norcross, GA 30092, attorneys for Costello Industries, Inc. in the Graves Lawsuit; ; Billy Gunn, Alan Maxwell, of Weinberg, Hudgins, Gunn & Dial, 950 East Paces Ferry Road, Atlanta, GA 30326, attorneys for Costello Industries, inc. in the Graves Lawsuit; David M. Toolan, Esquire, APAC Inc. Law Department, 900 Ashwood Parkway, Suite 700, Atlanta, GA 30338, Christopher Schuman, Esquire, Lisa Richardson, Esquire, Mozley, Finlayson & Loggins, LLP, One Premier Plaza, Suite 900, 5605 Glenridge Drive, Atlanta, Georgia 30342-1386. Defense counsel have knowledge of the conduct of the litigation of the Graves lawsuit.

In addition, numerous individuals, fact witnesses and expert witnesses, were deposed in the Graves Lawsuit, and Defendant will make copies of depositions from the Graves Lawsuit available for review and inspection at a mutually agreeable time and place. Defendant objects to summarizing all information available from Plaintiff's review of said depositions, as the information sought is equally available to Plaintiff.

# ATTACHMENT C

1. Defendant's contract file for the Project wherein the Graves Accident occurred.
2. Subcontract entered into between Defendant and Costello Industries, Inc.
3. Liberty Mutual Insurance Policy.
4. Correspondence between Liberty Mutual and Defendant regarding the Graves Lawsuit.
5. Correspondence between Liberty Mutual and the excess carrier for the Graves Lawsuit.
6. Legal documents and filings from the Graves Lawsuit.
7. Correspondence, reports and filings prepared by Liberty Mutual's appointed counsel on behalf of Costello and APAC for the Graves Lawsuit.
8. Internal communications of Liberty Mutual regarding the Graves Lawsuit and APAC's and Costello's respective liability exposure.
9. Liberty Mutual's claim files for the Graves Accident.
10. All evaluations of liability prepared by Liberty Mutual, or its agents, regarding the Graves Accident.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

James V. Chin, Esquire
Robins, Kaplan, Miller & Cirisi, L.L.P.
2600 One Atlanta Plaza
950 East Paces Ferry Road, N.E.
Atlanta, GA  30326

This 16th day of August 2007.

/s/ M. Craig Hall
M. Craig Hall
GBN:  319220
Counsel for Defendant

Law Offices of M. Craig Hall, LLC
1535 Mt. Vernon Road, Suite 200
Dunwoody,  GA 30338
(phone) 770/698/0555
(facsimile) 770/573/3601
Craighall@DunwoodyLawyers.com

## LOCAL RULE 7.1(D) CERTIFICATION

Pursuant to Local Rule 7.1(D), I hereby certify that this brief has been

prepared with Times New Roman, 14 point.


/s/ M. Craig Hall
M. Craig Hall