IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO.: 1:07-CV-1516 JEC |
| v. | ) | |
| | ) | |
| APAC-SOUTHEAST, INC., f/k/a APAC-GEORGIA, INC., | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

**RESPONSE TO PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S EXPERT DESIGNATION**

Plaintiff's Motion to Strike Defendant's Expert Designation is premature, as it is premised upon its assumption that this Court will not grant Defendant's Motion to Extend the Discovery Period.[1] Indeed, Plaintiff inappropriately attempted to mingle its opposition to Defendant's Motion to Extend with its Motion to Strike APAC's Expert Designation. To the degree that this Court grants Defendant's Motion to Extend the Discovery Period, the arguments raised in Plaintiff's Motion to Strike are rendered baseless and moot, and Defendant respectfully requests that this Court deny Plaintiff's Motion to Strike in the event

[1] Defendant incorporates the arguments raised in its Motion to Extend the Discovery Period and Reply to Plaintiff's Response to its Motion to Extend the Discovery Period as though expressly stated herein, and Defendant respectfully requests that this Court deny Plaintiff's Motion to Strike for the reasons recited therein.

that it grants Defendant's Motion to Extend the Discovery Period.

Moreover, as noted in Plaintiff's Motion to Strike, Plaintiff has already agreed that additional discovery beyond the initial close of the discovery was both (a) agreed to between the parties and (b) warranted in this action. Specifically, Plaintiff notes that it first sought to depose Mr. William Miller, a representative of Defendant, with less than two weeks remaining in the discovery period. Defendant worked diligently to set a date for the deposition, and it was conducted on December 20 – outside the close of the original discovery period. Liberty Mutual has also agreed to produce *one or more* representatives to testify as to matters identified by APAC in a 30(b)(6) deposition notice. As of the date of this filing, Liberty Mutual has not indicated how many deponents it intends to present to testify, and Liberty Mutual has not offered a single date for the noticed deposition. As such, Liberty Mutual's claims that APAC disclosed its expert only 8 days prior to the close of discovery are half-hearted, as Liberty Mutual has already acknowledged the need to extend the discovery period by <u>an additional 17 days as of the date of the filing of this Response</u> (thereby resulting in almost 1 month of the existing discovery period remaining open at the time of APAC's expert witness disclosure). This time period will only increase until Liberty Mutual finally offers a mutually-available date for the agreed-upon deposition(s) and until same are

completed.

Local Rule 26.2(C) directs parties to disclose experts sufficiently early in the discovery period to permit the opposing party the opportunity to depose and, if desired, to name its own expert witness. Anticipating that circumstances may preclude disclosures that comply with its requirements, Local Rule 26.2 (C) further provides that the Court will authorize a disclosure that may not be sufficiently early in the discovery period if the failure to comply with the Local Rule was "justified." As noted below, APAC's failure to identify Dr. Ryles earlier in the discovery period of this action was clearly justified. Alternatively, any alleged delay, which is denied by APAC, was harmless to Liberty Mutual and should therefore be allowed pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure.

### A. APAC's failure to identify Dr. Ryles as an expert witness earlier in this action was clearly justified, as contemplated by Local Rule 26.2(C)

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure provides as follows:

> Except as otherwise stipulated or directed by the court, **[the expert witness] disclosure shall**, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, **be accompanied by a written report prepared and signed by the witness. The report shall contain a complete**

> **statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions** … .

Emphasis supplied. Accordingly, by the very terms of Rule 26, an expert witness disclosure **must** be accompanied by the expert witness' Rule 26 written report containing a "complete statement of all opinions to be expressed and the basis and reasons therefore." As explained fully below, it is hard to conceive of an earlier disclosure of Dr. Tim Ryles which could have possibly complied with the mandatory requirements of Rule 26.[2]

**The timing for APAC's expert witness disclosure is justified because of Liberty Mutual's refusal to produce its claims adjusters for deposition until well over ½ of the discovery period had elapsed in spite of APAC's requests for their depositions from the second day of the discovery period forward.**

In its Motion to Strike, Plaintiff incorrectly alleges that Dr. Ryles was in possession of "virtually all of the materials" he reviewed to form his opinions "by the end of October 2007." Motion to Strike, p. 9. Plaintiff is fully aware that, even as of the filing of this Response, Liberty Mutual has essentially failed to produce any meaningful documents that could have been utilized by Dr. Ryles to form any opinions concerning the subject matter of this lawsuit, much less that would have enabled him to prepare a report that complied with Rule 26 of the Federal Rules of

[2] Plaintiff surely would have sought to exclude any expert disclosed by Defendant if such disclosure did not include

Civil Procedure. Indeed, the only documents of consequence which Dr. Ryles has been afforded the opportunity to review prior to being forced to complete his Rule 26 report were the deposition transcripts of the Liberty Mutual adjusters responsible for oversight of the underlying lawsuit giving rise to this litigation (the "Graves Lawsuit").[3]

As explained fully in APAC's Motion to Extend Discovery and Reply to Liberty Mutual's Response thereto, **Liberty Mutual delayed over <u>two months</u> following APAC's repeated deposition requests before agreeing to make a single witness available for deposition in this action. APAC was not permitted to depose either of Liberty Mutual's claims handlers assigned to the Graves Lawsuit until October 16, 2007 and October 30, 2007, respectively – which were the FIRST dates Liberty Mutual offered to produce its witnesses.** Indeed, APAC first sought to depose Messrs. Milton Harrelson and Harvey Whichard by and through correspondence dated August 16, 2007.[4] It was only after repeated inquiries that Liberty Mutual finally agreed to produce these gentlemen for deposition, proclaiming that the first available dates for their

---

a written report that fully complied with Rule 26.

[3] As noted above, Liberty Mutual delayed producing its claims adjusters for deposition until October 16 and October 30, respectively. APAC could not even supply its expert with the transcripts of the depositions until the court reporters were afforded an opportunity to transcribe the lengthy depositions.

[4] Documentation evidencing APAC's repeated requests for the depositions of Messrs. Whichard and Harrelson were supplied to the Court as exhibits to Defendant's Motion to Extend Discovery, and to Defendant's Reply to Plaintiff's Response to Defendant's Motion to Extend Discovery.

depositions were October 16 and October 30, respectively. APAC accommodated Liberty Mutual's scheduling and accepted the first available dates to depose Messrs. Harrelson and Whichard. By the time APAC was afforded an opportunity to depose the claims handlers responsible for the Graves Lawsuit, *well over ½* of the discovery period had expired due *solely* to Liberty Mutual's refusal to produce them earlier.

**The parties have already agreed to extend discovery in this action. Liberty Mutual's claims that APAC delayed its expert witness disclosure until the eve of the close of discovery are therefore misleading.**

Although the Court has yet to rule on APAC's Motion to Extend the Discovery Period in this action, it is noteworthy that both Liberty Mutual and APAC acknowledge the need to continue the discovery period in this action through, at a minimum, the date of the filing of this Response and the foreseeable future. In particular, Liberty Mutual has acknowledged an obligation on its part to produce a minimum of one deponent to respond to APAC's 30(b)(6) deposition notice. Liberty Mutual has indicated that it requires additional time to "study possible objections" and "identify appropriate deponents" to testify to the matters identified in APAC's notice of deposition. Consequently, Liberty Mutual has, by and through its conduct and actions, already extended the discovery period in this action a minimum of 17 days beyond the original discovery period – much less the

additional time that is yet to be required to schedule an agreeable date and time for the agreed-upon deposition. Assuming that the Court does not object to the parties' voluntary agreement to extend discovery in this action, the practical effect of the parties' conduct is an extension of the discovery period by a minimum of 1 month.

Of course, APAC's disclosure of its expert is therefore a minimum of approximately 1.5 months prior to the practical close of discovery in this matter. APAC offered to immediately produce Dr. Ryles for deposition following his disclosure. APAC also offered to consent to an extension of the discovery period by a reasonable period of time to the degree that Liberty Mutual sought to disclose a rebuttal expert.[5] Despite APAC's agreement to produce Dr. Ryles for deposition and to allow Liberty Mutual to identify and name any expert of its choosing, Liberty Mutual has not indicated any desire to do so. Liberty Mutual has also allowed almost a month to be exhausted (including available time within the first discovery period) without requesting to depose Dr. Ryles.

---

[5] Liberty Mutual's characterization of this dispute as "not complex" in its Motion to Strike, however, would tend to suggest that Liberty Mutual does not see a need to disclose an expert in this matter regardless of APAC's retention of an expert witness. (Motion to Strike, p. 2). Such a characterization also argues against any prejudice that Liberty Mutual could claim to suffer by APAC's alleged untimely disclosure of its expert witness.

**The timing of APAC's expert witness disclosure is justified by (a) Liberty Mutual's stubborn refusal to engage in the discovery process and produce any documents relied upon by its claims adjusters to evaluate APAC's liability in the Graves Lawsuit and/or to reject APAC's requests that Liberty Mutual work to settle the Graves Lawsuit; and (b) Liberty Mutual's delay until December 6th to produce an incomplete portion of the policies governing its claims handlers duties owed to APAC in the Graves Lawsuit.**

Despite filing timely Certificates of Service of discovery responses with the Court, Liberty Mutual repeatedly delayed production of the limited documents it grudgingly produced in this action. As an example, APAC requested copies of the policies and procedures that governed Liberty Mutual's claims handlers responsibilities toward APAC in its *first, second and third* Requests for Production of Documents (the first of which was propounded upon Liberty Mutual back on August 16, 2007 (the second day of the discovery period)), and Liberty Mutual delayed production of any responsive documents addressing Liberty Mutual's claims handlers' duties to APAC in the Graves Lawsuit until December 6, 2007 (10 days prior to the close of the original discovery period). (See Exhibit B). Significantly, the limited documents it did finally produce were littered with unexplained redactions and appear to be an isolated portion of a larger, unidentified document. Liberty Mutual's incomplete production resulted in the filing of APAC's Second Motion to Compel Discovery from Liberty Mutual.[6] As

[6] Liberty Mutual has since amended its discovery responses (following the close of the original discovery period) in

of the date of this filing, APAC has two outstanding Motions to Compel Discovery pending against Liberty Mutual in this action.

APAC's allegedly untimely expert disclosure is further justified because of Liberty Mutual's repeated delays in engaging in discovery in this action. Dr. Ryles' Rule 26 report consists of opinions which could not have been formed and disclosed at an earlier point in the discovery period. As noted above, Liberty Mutual delayed until well over ½ of the discovery period was complete before finally producing its claims adjusters for deposition. Liberty Mutual still has not produced a single document relied upon by its adjusters to evaluate APAC's liability and exposure in the Graves Lawsuit.[7] Despite Liberty Mutual's refusal to disclose the basis for its adjusters' actions in the Graves Lawsuit, Liberty Mutual is now inconsistently arguing that APAC should have disclosed Dr. Ryles and produced his Rule 26 report at some earlier point in time – after acknowledging in its Motion to Strike that the basis of Dr. Ryles' report concerns the actions of its claims adjusters and their refusal to respond to APAC's demands that Liberty Mutual work to settle the Graves Lawsuit.

---

an incomplete effort to comply with its discovery obligations. Liberty Mutual's amended responses still do not cure its discovery failures. Regardless, Liberty Mutual's amended responses, at a minimum, serve as an admission of its failure to comply with its discovery obligations and serve to justify APAC's allegedly untimely expert disclosure.

[7] This fact remains at issue in APAC's First Motion to Compel Discovery from Liberty Mutual.

**The expert witness opinion at issue is premised upon the discovery which has been opposed, delayed and thwarted by Liberty Mutual, and the timing of APAC's expert witness disclosure is therefore justified.**

Rule 26 requires that an expert witness disclosure be accompanied by an expert witness report that discloses a "complete statement of all opinions to be expressed and the basis and reasons therefore." As noted by Liberty Mutual, APAC's Counterclaim includes allegations concerning Liberty Mutual's claims handling practices in the Graves Lawsuit. Despite 3 different requests for production of documents being directed at all documents relied upon by its claims adjusters to perform their duties in the Graves Lawsuit, Liberty Mutual delayed until December 6, 2007 (10 days prior to the scheduled close of discovery) before producing a single document which referenced its claim handling procedures. Moreover, Liberty Mutual has failed to produce a single document upon which it allegedly relied to evaluate APAC's liability and exposure in the Graves Lawsuit – and/or upon which it relied to refuse to respond to APAC's demands that it work to settle the Graves Lawsuit within Liberty Mutual's policy limits. Of course, these documents are at the very heart of APAC's Counterclaim in this action.

In the Rule 26 report at issue, Dr. Ryles has offered 3 separately identified opinions in this matter.[8] Each opinion is based almost exclusively upon his review

[8] Dr. Ryles Rule 26 report is included as an attachment to Liberty Mutual's Motion to Strike Defendant's Expert

of the deposition testimony of Messrs. Whichard and Harrelson – as that is the only form of meaningful documentation that APAC has been able to elicit from Liberty Mutual concerning its handling of the Graves Lawsuit. Indeed, two Motions to Compel remain outstanding at the time of the filing of this Response. Dr. Ryles' opinions were disclosed only 38 days after Liberty Mutual **FINALLY** agreed to produce its claims adjusters for deposition in this action – and *before* Liberty Mutual produced the first document describing its adjusters' duties to APAC and/or a single document relied upon by its adjusters in evaluating APAC's liability and exposure in the Graves Lawsuit. Given the nature of this dispute and its focus on the action of Liberty Mutual's adjusters in the Graves Lawsuit, it is hard to imagine a scenario whereby Dr. Ryles could have produced a report that complied with Rule 26 at an earlier point in this litigation.

**Liberty Mutual's Amended Answer to Counterclaim justifies the timing of APAC's expert witness disclosure.**

As noted by APAC in its Motion to Extend Discovery, Liberty Mutual amended its Answer to add a new affirmative defense on November 8, 2007. The effect of its Amended Answer to Counterclaim was to inject questions concerning insurance coverage for the Graves Lawsuit into this case – *for the first time.* Significantly, the injection of insurance coverage issues into this lawsuit on

---

Designation.

November 8 precluded APAC from engaging in discovery concerning this matter during the original discovery period and has precluded APAC from expanding the scope of Dr. Ryles' analysis to include an examination of Liberty Mutual's coverage position. APAC therefore is also entitled to an extension of time to both disclose any expert in this matter and to engage in discovery to inquire fully into Liberty Mutual's coverage position.[9]

### B. APAC's failure to identify Dr. Ryles as an expert witness earlier in this action was harmless.

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides an allowance for consideration of evidence even in situations where there was no "substantial justification" for failure to disclose information required by Rule 26(a) where such failure was harmless. In the present case, APAC asserts that the timing of its expert witness designation was justified as described above. Assuming, *arguendo*, however, that this Court finds that the disclosure was untimely and not justified, the evidence clearly demonstrates that it was still harmless and should therefore be allowed.

When considering whether a disclosure is harmless, courts must "consider a

[9] Furthermore, given APAC's consent to allow Liberty Mutual an extension of time to file an answer to APAC's Counterclaim, and its subsequent consent to allow Liberty Mutual to file an Amended Answer to said Counterclaim, counsel for APAC anticipated that the parties would cooperate on discovery matters and agree to a discovery extension in light of the posture of this action.

multiplicity of pertinent factors, including the history of the litigation, the proponent's need for the challenged evidence, the justification (if any) for the late disclosure, and the opponent's ability to overcome its adverse effects. Surprise and prejudice are important integers in this calculation. So too is an assessment of what the late disclosure portends for the court's docket." Gagnon v. Teledyne Princeton, Inc., 437 F.2d 188, 197-198 (1st Cir. 2006), citing Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003).

In the present case, an analysis of the above factors confirms that the allegedly late disclosure is harmless to Liberty Mutual. With respect to the history of the litigation, APAC has demonstrated that it has worked diligently to conduct and complete discovery in a timely manner. Liberty Mutual has opposed, delayed and thwarted APAC's good faith discovery efforts, resulting in the filing of two Motions to Compel Discovery against Liberty Mutual. The discovery period has not been extended thus far, and APAC has demonstrated sufficient basis to extend the discovery period in its related filings.

Moreover, this lawsuit is the result of a declaratory action filed by Liberty Mutual in an effort to avoid paying insurance proceeds *already* due and owing to APAC. Liberty Mutual's conduct has previously forced APAC to advance $1,000,000 of its own monies while Liberty Mutual attempts to avoid honoring its

insurance obligations. APAC is the party that has a compelling interest to move this matter to trial, as it is the only party that has suffered prejudice. Liberty Mutual cannot establish any prejudice by the timing of the disclosure at issue. To the degree that Liberty Mutual claims it needs to retain a rebuttal expert to avoid prejudice, APAC has already indicated a willingness to agree to a reasonable discovery extension and has filed a Motion of its own seeking to extend discovery for unrelated reasons. APAC has also offered to immediately produce Dr. Ryles for deposition, but Liberty Mutual has declined the offer.

In addition, Dr. Ryles' opinions do not introduce any new issues into this dispute, and Liberty Mutual even acknowledges as much by its failure to allege to the contrary. Rather, Liberty Mutual simply claims that APAC should have disclosed Dr. Ryles sooner – while ignoring the undeniable fact that its actions precluded Dr. Ryles the opportunity to review any meaningful documentation in the case and/or to prepare a proper Rule 26 report until well over ½ of the discovery period had expired. APAC has already illustrated above how it was justified in the timing of its expert witness disclosure.

Finally, with respect to the Court's docket, the timing of the disclosure will not result in any delay to the trial of this action. Defendant has two Motions to Compel Discovery, and a Motion to Extend the Discovery period, which are

currently outstanding. Further, this Court has already indicated that the timing for the filing of dispositive motions is in abeyance until this Court rules on Defendant's Motions to Compel Discovery from Plaintiff. Consequently, allowing the expert witness disclosure to stand will not adversely affect this Court's docket. Thus, the timing of the expert witness disclosure is harmless.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiff's Motion to Strike APAC's expert witness designation.

Respectfully submitted this 31st day of December, 2007.

Law Offices of M. Craig Hall, LLC

/s/ M. Craig Hall
M. Craig Hall
Georgia Bar No. 319220
1535 Mt. Vernon Road, Suite 200
Dunwoody, GA 30338
Telephone (770) 698-0555
Facsimile (770)573-3601
CraigHall@DunwoodyLawyers.com

ATTORNEY FOR DEFENDANT
APAC-SOUTHEAST, INC. f/k/a
APAC-GEORGIA, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

James Chin, Esquire
Robins, Kaplan, Miller & Cirisi, L.L.P.
2600 One Atlanta Plaza
950 East Paces Ferry Road, N.E.
Atlanta, GA 30326

This 31st day of December 2007.

/s/ M. Craig Hall
M. Craig Hall
GBN: 319220
Counsel for Defendant

Law Offices of M. Craig Hall, LLC
1535 Mt. Vernon Road, Suite 200
Dunwoody, GA 30338
(phone) 770/698/0555
(facsimile) 770/573/3601
Craighall@DunwoodyLawyers.com

## LOCAL RULE 7.1(D) CERTIFICATION

Pursuant to Local Rule 7.1(D), I hereby certify that this brief has been prepared with Times New Roman, 14 point.

/s/ M. Craig Hall
M. Craig Hall